<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANDREA GOK,<br><br>                     Plaintiff,<br>        v.<br><br>PORTS AMERICA, INC., PORT<br>NEWARK CONTAINER TERMINAL,<br>JAMES PELLICCIO, MARKUS BRAUN,<br><br>                     Defendants. | Civil Action No. 15-3468 (SRC)<br><br>OPINION |

**<u>CHESLER</u>**, District Judge

This matter comes before the Court upon the motion to dismiss filed by Defendants Ports America, Inc. ("Ports America"), Port Newark Container Terminal L.L.C. ("PNCT"), James Pelliccio and Markus Braun (collectively "Defendants"), and upon the cross motion filed by Plaintiff Andrea Goc ("Plaintiff" or "Ms. Goc") to amend her complaint. The Court has considered the parties' submissions and proceeds to rule without oral argument. For the reasons that follow, the Court will grant Plaintiff's motion for leave to amend the Complaint, and the Court will grant in part and deny in part Defendants' motion to dismiss.

**I.     BACKGROUND**

In this case, an individual claims that her former employers terminated her position unlawfully. The Court gathers the following facts from Plaintiff's Complaint and assumes them to be true for purposes of this motion only.

Ports America and PNCT operate in Newark, New Jersey. Mr. Pelliccio is PNCT's President and CEO, and Mr. Braun is the company's Chief Financial Officer. Plaintiff Ms. Goc

1

worked as an executive assistant for PNCT from 2004 until 2013, and from 2011 to 2013, she specifically worked as the assistant to Mr. Pelliccio.

In 2011, Plaintiff's performance reviews began to decline, though Plaintiff disputes that her actual performance had worsened. On March 21, 2013, Mr. Pelliccio informed Plaintiff that her employment was being terminated. At the time, Plaintiff was 59 years old. Defendants replaced Plaintiff with a younger employee.

Since Plaintiff's termination, she has been unable to find new employment or support her mother. Plaintiff further asserts that while still working for Defendants, she suffered emotional distress because Defendants had failed to inform her that PNCT was closed in the days after Hurricane Sandy, and because Mr. Pelliccio asked her to leave a meeting shortly before her termination.

Plaintiff sued Defendants in the Superior Court of New Jersey, Law Division, in March of 2015. In the Complaint, Plaintiff pleads a violation of: (1) the federal Age Discrimination in Employment Act ("ADEA"); (2) the New Jersey Law Against Discrimination ("NJLAD"); (3) New Jersey's common law against Intentional/Negligent Infliction of Emotional Distress; and (4) express/implied contract.

Defendants removed the action to this Court in May of 2015. This Court has federal subject matter jurisdiction over Plaintiff's ADEA claim, and it exercises supplemental jurisdiction over Plaintiff's state law claims, which arise from the same nucleus of operative facts as the federal claim.

On May 26, 2015, Defendants moved to dismiss Plaintiff's Complaint. They argue that Plaintiff's claims all fail as a matter of law. Plaintiff opposes the motion, arguing that she has established a prima facie case of age discrimination and that she has adequately pleaded her

other theories of relief.  Plaintiff also moves the Court for leave to file an Amended Complaint. Defendants urge that leave to amend should be denied as futile because even the Amended Complaint cannot survive a motion to dismiss.

II. DISCUSSION

A. Standard of Review

A complaint will survive a motion to dismiss under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atlantic v. Twombly, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  Following Iqbal and Twombly, the Third Circuit has held that to prevent dismissal of a claim the complaint must show, through the facts alleged, that the plaintiff is entitled to relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  In other words, the facts alleged "must be enough to raise a right to relief above the speculative level[.]'"  Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555).

While the Court must construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as factual allegation."  Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice."  Iqbal, 556 U.S. at 678.  In reviewing a motion to dismiss under Rule 12(b)(6), a court may consider the allegations of the complaint, as well as

3

documents attached to or specifically referenced in the complaint, and matters of public record. See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990)).

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must consider the complaint in its entirety, and the Court may also consider "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, 551 U.S. 308, 322-23 (2007); see also Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (holding that court reviewing motion to dismiss may consider complaint allegations, documents specifically referenced in the complaint, and public record).

### B.  Leave to Amend

Plaintiff seeks leave to amend the complaint to add allegations that Plaintiff's replacement was 42 years old, that Mr. Pelliccio was 51 when Plaintiff was fired, and that Plaintiff's former supervisor was 66.  Plaintiff argues that the original Complaint already alleged that Plaintiff's replacement was much younger than Plaintiff, and therefore adding the specific age should not come as a curveball to Defendants.  Plaintiff also notes that Defendants likely knew the replacement's age, which further undermines any claim of prejudice.  Defendants urge the Court to deny leave to amend because doing so would be futile.

The Court will grant Plaintiff leave to amend the complaint.  Courts are directed to "freely give leave [to amend] when justice so requires."  See Fed. R. Civ. P. 15(a)(2).  Plaintiff's new allegation regarding the age of her replacement cures a principal deficiency in her age-discrimination claim.  While Courts are permitted to deny leave to amend when it would be futile, In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997), here the

new information renders Plaintiff's discrimination claim sufficient. Plaintiff is directed to file an amended complaint by August 28, 2015.

### C. Age Discrimination

Plaintiff claims that Defendants discriminated against her on the basis of her age in violation of both the ADEA and the NJLAD. To assess claims of employment discrimination, the Court applies the burden-shifting framework set forth initially in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later modified. That framework has three steps:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
>
> [Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (internal citations and quotation marks omitted)].

This standard governs both the ADEA and NJLAD claim. Davis v. City of Newark, 285 F. App'x 899, 903 (3d Cir. 2008) ("Discrimination claims brought under Title VII and NJLAD must be analyzed according to the burden-shifting framework set forth by the Supreme Court in McDonnell[.]"); Abrams v. Lightolier, Inc., 50 F.3d 1204, 1212 (3d Cir. 1995) ("New Jersey courts in applying the NJLAD generally follow the standards of proof applicable under the federal discrimination statutes.").

Plaintiff may demonstrate a prima facie case by "showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the

plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).  This initial burden is not onerous.  See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) ("[T]here is a low bar for establishing a prima facie case of employment discrimination . . . . the prima facie case is easily made out[.]") (internal citations and quotation marks omitted).

Here, accepting the allegations of the Amended Complaint, Plaintiff has cleared the "low bar" of establishing a prima facie cause of age discrimination.  To wit, Plaintiff has alleged that (1) she was 59 when she was fired, and therefore a member of a protected class; (2) that she was fired, which constitutes an adverse employment decision; (3) that she was qualified, as indicated by her long-term employment with Defendants and many years of positive reviews; and (4) that her replacement was 17 years younger than Plaintiff.  Though Defendants have numerous potentially meritorious defenses against Plaintiff's claim, including an allegation that Plaintiff's performance became increasingly poor, the Amended Complaint is legally sufficient to proceed past the dismissal stage.  Defendants' motion to dismiss is therefore denied with respect to Plaintiff's claims of age-discrimination.

### D.  Intentional and Negligent Infliction of Emotional Distress

Plaintiff pleads that Defendants intentionally inflicted emotional distress upon her.  To sustain a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must plead, among other things, that Defendants' conduct was extreme and outrageous.  Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988).  Plaintiff has failed to plead any facts that satisfy this standard.  Defendants' alleged misconduct -- discriminatorily firing Plaintiff, failing to inform her that the office was closed after Hurricane Sandy, and asking her to exit a meeting --

6

simply does not rise to the level of behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id.; see also Griffin v. Tops Appliance City, Inc., 766 A.2d 292, 297 (N.J. App. Div. 2001) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.") (citing Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988), cert. denied, 498 U.S. 811, 111 (1990)). Defendants' motion to dismiss this claim is accordingly granted.

Plaintiff also pleads a claim for negligent infliction of emotional distress ("NIED").  To sustain it, Plaintiff must plead either that she observed the casualty of her close family member or that Defendants' negligence caused her "a reasonable fear of immediate personal injury" that caused "substantial bodily injury or sickness."  Jablonowska v. Suther, 948 A.2d 610, 617 (N.J. 2008).  Neither principle is remotely applicable to the facts alleged by Plaintiff.  In any event, Plaintiff's NIED claim is remediable exclusively through workers' compensation.  N.J.S.A. § 34:15-8; see also Smith v. Exxon Mobil Corp., 374 F. Supp. 2d 406, 424 (D.N.J. 2005) ("Plaintiff's claims for negligent infliction of emotional distress ('NIED') will be dismissed. The New Jersey Workers' Compensation Act, N.J.S.A. § 34:15-8, provides the exclusive remedy by which an employee may recover for injuries caused by workplace negligence."); Ditzel v. Univ. of Med. & Dentistry of New Jersey, 962 F. Supp. 595, 608 (D.N.J. 1997) (holding same). Plaintiff's NIED claim will therefore also be dismissed.

### E.  Contractual Breach

Plaintiff next claims that Defendants are liable for a breach of contract because they fired her before engaging in the kind of progressive discipline called for in her employment handbook.

7

The Court must dismiss this claim as legally deficient.  When an employment handbook clearly and prominently disclaims that it creates an employment contract, it cannot be interpreted as having created one anyway.  See Woolley v. Hoffman-LaRoche, 99 N.J. 284, 309, modified, 101 N.J. 10 (1985); Nicosia v. Wakefern Food Corp., 136 N.J. 401, 412 (1994) ("An effective disclaimer by the employer may overcome the implication that its employment manual constitutes an enforceable contract of employment.").

Plaintiff relies upon and references the Ports America Employee Guide ("the handbook") in her Complaint, and Defendants submitted it as part of their dismissal papers.  The Court may therefore consider the handbook when deciding this motion.  See Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court.").

The handbook's introductory page states, "The policies and procedures contained in this Guide constitute guidelines only.  They do not constitute part of an employment contract and cannot be construed as a legal document."  [Docket Entry 3, Doc. 2, Pg. 10].  The same page goes on to explain as follows, in bold typeface:

> **The Company maintains an "at will" relationship with all employees, meaning that either the employee or the Company may end the employment relationship at any time. This Guide is not a contract with employees, nor does it contain any promises related to the length of employment.**

[Id. (emphasis in original)].

Moreover, with respect to the precise progressive-discipline language upon which Plaintiff relies, there is another express disclaimer of any contractual obligations:  "The Company retains the right to administer discipline in the appropriate manner it seems fit . . . . The Company may, in

8

its sole discretion, deviate from or accelerate progressive counseling steps at any time . . . . The progressive discipline process does not alter the at-will nature of the employment relationship." [Id. at 75].  Finally, Plaintiff signed an acknowledgement form which stated that she understood that the handbook did not create any contractual obligations nor modify her at-will employment. [Id. at 92].

In light of these clear and prominent disclaimer provisions, the Court finds that Plaintiff's contract claim must be dismissed.  See Woolley, 99 N.J. at 285.

Plaintiff has also sought to argue that Defendants' unwritten policies may have created contractual obligations.  Such assertions are not found in Plaintiff's Complaint, but in any event, Plaintiff fails to plead that any specific, authorized oral promises regarding discipline policies were ever made to her.  See Reynolds v. Palnut Co., 748 A.2d 1216, 1221 (N.J. App. Div. 2000) (requiring employee to show that the alleged verbal policy was "pervasive and company-wide"; that the oral pronouncements related to the policy were accurate and authorized; and that the employees reasonable expected the policy to apply to them).  Plaintiff's new and additional argument cannot sustain her contract claim.

**F.  Individual Liability**

Last, the Court must address whether Plaintiff's remaining claims -- age discrimination under the NJLAD and the ADEA -- must be dismissed as against the individual Defendants, James Pelliccio and Markus Braun.

As a matter of law, "the ADEA does not provide for individual liability."  Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006).  Plaintiff's federal ADEA claim is therefore dismissed as against Mr. Pelliccio and Mr. Braun.

With respect to the NJLAD, supervisors can indeed be held personally liable if they "aid, abet, incite, compel or coerce" acts forbidden by the statute. N.J.S.A. § 10:5-12(e). Here, Plaintiff's Complaint states no factual allegations whatsoever with respect to Mr. Braun, nor does it contend that he acted as a supervisor. The Court will accordingly dismiss Plaintiff's NJLAD claim against the company's CFO, Mr. Braun. Plaintiff has, however, alleged that Mr. Pelliccio acted as her supervisor and is directly responsible for her discriminatory termination. The Court will thus permit Plaintiff's NJLAD claim to proceed as against Mr. Pelliccio.

### III. CONCLUSION

For these reasons, the Court grants Plaintiff's motion for leave to amend, and the Court grants in-part and denies in-part Defendants' motion to dismiss. Specifically, the Court dismisses Plaintiff's claims for contractual breach, NIED, and IIED, in their entirety. The Court will permit Plaintiff's NJLAD claim to proceed as against Defendants Ports America, PNCT, and Mr. Pelliccio. The Court will permit Plaintiff's ADEA claim to permit as against Defendants Ports America and PNCT. An appropriate order will be filed.


                                                                     s/ Stanley R. Chesler
                                                             STANLEY R. CHESLER
Dated:  August 17, 2015                        United States District Judge